IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
*EL PASO DIVISION*

| | | |
|---|---|---|
| HUDSON INSURANCE COMPANY, | § § § § | |
| *Plaintiff,* | § | |
| V. | § § | CASE NO. 3:19-cv-00098 |
| HORIZONE CONSTRUCTION I, LTD., RENT & BUILD, LTD., ROSA M. DE STEFANO, and LUIS R. DE STEFANO | § § § § § | |
| *Defendants* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, Hudson Insurance Company, complains of Horizone Construction I, Ltd., Rent & Build, Ltd., Rosa M. De Stefano, and Luis R. De Stefano, Defendants, and respectfully states as follows:

### *Parties*

1. HUDSON INSURANCE COMPANY, ("Hudson" or "Plaintiff") is a New York domiciled stock insurer. At all times relevant to the issuance of the bonds which are the subject of this suit, Hudson was a New York corporation duly licensed and organized to conduct the business of suretyship in the state of Texas.

2. Horizone Construction I, Ltd. is a Texas limited partnership with its principal place of business in El Paso, Texas.

3. Defendant Rent & Build, Ltd. is a limited partnership with its principal place of business in El Paso, Texas.

4. Defendant Rosa M. De Stefano is a citizen of the state of Texas with a principal residence in El Paso, Texas.

5. Defendant Luis R. De Stefano is a citizen of the state of Texas with a principal residence in El Paso, Texas.

6. The Defendants are collectively referred to herein as "Defendants" or "Indemnitors."

### *Jurisdiction*

7. This court has diversity jurisdiction over this action pursuant to 28 U.S.C. §1332 and the amount in controversy exceeds $75,000, exclusive of interest and costs.

### *Venue*

8. Venue of this action is proper in the El Paso Division of this judicial district under 28 U.S.C. §1391 as substantially all pertinent events and omissions giving rise to the claims herein occurred in the El Paso Division of this judicial district and the Defendants, or the majority of them, reside in or transact business in this district.

9. All conditions precedent to bringing this action have occurred or have been waived.

### *Indemnification*

10. On or about June 16, 2015, the Defendants each executed a General Indemnity Agreement ("GIA") in favor of Hudson.

11. A copy of the GIA upon which this lawsuit is based is attached hereto as Exhibit "A."[1]

12. Each of the Defendants executed the GIA in partial consideration of Hudson, as Surety, agreeing upon approval, to furnish surety bonds on behalf of Horizone

---

[1] Properly redacted for privacy preservation.

Construction I, Ltd. ("Horizone") and/or Rent & Build, Ltd. ("Rent & Build") as Bond Principal.

13. Hudson, as Surety, issued Performance and Payment Bonds ("Bonds") in favor of Dan Williams Co. ("DWC") as named obligee for a construction project undertaken by Horizone known as the Bridge Replacement at FM 1110 and IH-10 Frontage Roads in El Paso, Texas. (the "Project").

14. Subsequent to issuing the Bonds, Hudson received a performance bond and reimbursement demand claim on the performance bond issued for Horizone to DWC; the general contractor for the Project. Horizone's construction contract was terminated by DWC. Thereafter Hudson was made a third-party respondent in an arbitration proceeding by DWC.

15. As surety for Horizone, Hudson incurred expenses in connection with the claim asserted against the performance bond by DWC.

16. Hudson's expenses included, but are not limited to, claim investigation expenses, mediation and arbitration expenses, consulting fees, and attorney's fees. All expenses incurred by Hudson were in connection with defending the bond claim asserted by DWC and in supporting Horizone's affirmative claims against DWC in the arbitration proceeding.

17. Hudson's expenses are reimbursable by the Defendants pursuant to the terms of the GIA.

18. The GIA provides, in pertinent part:

**INDEMNITY TO SURETY:** Undersigned agree to pay to Surety upon demand:

1. All loss, costs and expenses of whatsoever kind of nature, including, but not limited to: court costs and the cost of services rendered by attorneys (whether Surety at its sole option elects to employ its own attorney, or permits or requires Undersigned to make arrangements for Surety's legal representation), investigators, accountants, engineers, or other consultants, and any other losses, costs or expenses incurred by Surety by reason of

> having executed any Bond, or incurred by it on account of any Default under this Agreement by any of the Undersigned, or by reason of the refusal to execute any bond. In addition, the Undersigned agree to pay to Surety interest on all disbursements made by Surety in connection with such loss, costs and expenses incurred by Surety at the maximum rate permitted by law, calculated from the date of each disbursement.

19. Hudson has made demand for reimbursement of its expenses upon the Defendants, but the Defendants have failed and to comply with Hudson's demand for reimbursement.

20. Accordingly, Hudson here sues Defendants, as Indemnitors, for indemnity and reimbursement under the GIA, for all losses and expenses, including costs, interest, attorneys' fees, adjusting, accounting and investigative costs, and other professional services related to the defense of the claim asserted by DWC; all of which Hudson sustained because of having furnished the Bonds on behalf of Horizone. Defendants are also liable to Hudson under the legal theories of contractual indemnity, common law indemnity, unjust enrichment and restitution.

### *Attorney's Fees*

21. Hudson was required to employ attorneys to bring this suit and has agreed to pay attorney fees for legal services incurred in enforcing the provisions of the GIA. Hudson is entitled to recover its attorney fees incurred in this case from the Defendants pursuant to Tex. Civ. Prac. & Rem. Code Chap. 38 and pursuant to the terms of the GIA. Hudson is also entitled to recover its costs and expenses incurred in enforcing the provisions of the GIA.

WHEREFORE, Hudson Insurance Company requests that after trial, it recover judgment against the Defendants, jointly and severally, for

> 1. Financial losses and Expenses of not less than $200,000.00 sustained by Hudson because of having furnished the Bonds;

2. Prejudgment and postjudgment interest as allowed by law and as provided in the GIA;

3. Attorneys' fees incurred in filing this suit and enforcing the terms of the GIA;

4. Court costs incurred in filing this suit;

5. Such other and further relief to which Plaintiff may be entitled.

                              Respectfully submitted,

OF COUNSEL:

CUPPLES & ASSOCIATES, PLLC

By:   /s/ James D. Cupples
      JAMES D. CUPPLES, SBN 05252300
      Attorney - in - Charge
      SONIA M. MAYO, SBN 24002552
      700 Gemini Ave., Suite 200
      Houston, Texas 77058-2729
      Telephone:  (281) 218-8888
      Facsimile:  (281) 218-8788
      E-mail: admin@cuppleslaw.com

**ATTORNEYS FOR PLAINTIFF**
**Hudson Insurance Company**

Attachment: Exhibit A - General Indemnity Agreement dated June 16, 2015 - redacted

P:\ACTIVE\Hudson Ins\Horizone Co\Indemnity\Pleadings\Complaint.wpd

EXHIBIT "A"



Hudson Insurance Company
100 William Street, 5th Floor
New York, NY 10038
PH: 212-978-2800
FAX: 212-978-2899

## GENERAL INDEMNITY AGREEMENT

This GENERAL INDEMNITY AGREEMENT, is made by the Undersigned in favor of Hudson Insurance Company ("HIC") for the purpose of indemnifying HIC from all loss and expense in connection with any Bonds for which Hudson Insurance Company now is or hereafter becomes Surety for any of the following (hereinafter referred to as "Principal"):

| | |
|---|---|
| Horizone Construction I, Ltd. | Rent and Build, Ltd. |
| 10517 Alameda Avenue | 10517 Alameda Avenue |
| El Paso, Texas 79927 | El Paso, Texas 79927 |

In consideration of the execution of any such Bonds for the Principal and as an inducement to such execution by Surety, the Undersigned, jointly and severally, agree as follows.

DEFINITIONS: Where they appear in this Agreement, the following terms shall have the meaning as provided herein:

**Bond**: Any and all bonds, undertakings or instruments of guarantee and any continuation, extension, alteration, renewal or substitution thereof, whether with the same or different penalties, undertaken by Surety on behalf of or at the request of Principal, before or after the date of this Agreement.

**Contract**: Any agreement in which one or more of the Undersigned have an interest, including but not limited to, any agreement which is the subject of any Bond.

**Default**: Principal shall be deemed to be in default under this Agreement in the event it:
1. Is declared to be in default by the obligee of any Bond;
2. Actually breaches or abandons any Contract;
3. Fails to pay, to the extent due in whole or in part, claims, bills or other indebtedness incurred in connection with the performance of any Contract;
4. Becomes the subject of any agreement or proceeding of bankruptcy, liquidation or receivership, or actually becomes insolvent;
5. Breaches, fails to perform, or comply with, any provision of this Agreement;
6. Makes any materially false or misleading statement with respect to any warranty, representation or statement contained in this Agreement or the declaration hereto or made or furnished to the Surety ( whether orally or in writing ) by or on behalf of the Undersigned in connection with this Agreement, any Bond or any claims thereunder;  or
7. If an individual sole proprietor, dies, is adjudged mentally incompetent, is convicted of a felony or disappears and cannot be immediately found by Surety by use of usual methods.

**Principal**: The persons or entities set forth above, their subsidiaries, affiliates, successors, executors, administrators, personal representatives and assigns, now in existence or hereafter formed or acquired and/or any one of them or any combination thereof, or their successors in interest, whether alone or in joint ventures, partnerships, limited liability companies, or corporations with others named herein or not.

**Surety**: Any one or combination of the following: HIC, and any other person or company that procures a Bond for HIC or joins with HIC in executing any Bond at their request, or provides reinsurance to them with respect to any Bond, and any subsidiaries, successors, and assigns thereof.

**Undersigned**: The Principal and all other persons or entities executing the Agreement, their successors, executors, administrators, personal representatives and assigns.

**INDEMNITY TO SURETY**: Undersigned agree to pay to Surety upon demand:

Hudson Insurance Company

Page 2 of 10

1. All loss, costs and expenses of whatsoever kind of nature, including, but not limited to: court costs and the cost of services rendered by attorneys (whether Surety at its sole option elects to employ its own attorney, or permits or requires Undersigned to make arrangements for Surety's legal representation), investigators, accountants, engineers, or other consultants, and any other losses, costs or expenses incurred by Surety by reason of having executed any Bond, or incurred by it on account of any Default under this Agreement by any of the Undersigned, or by reason of the refusal to execute any bond. In addition, the Undersigned agree to pay to Surety interest on all disbursements made by Surety in connection with such loss, costs and expenses incurred by Surety at the maximum rate permitted by law, calculated from the date of each disbursement.
2. An amount sufficient to discharge any claim made against Surety on any Bond, whether Surety will have made any payment or established any reserve therefore. Such payment to be in the amount deemed necessary by the Surety to protect it from any loss, cost or expense. This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss, cost or expense on any Bond. The Undersigned acknowledges that their failure to pay, immediately on demand by the Surety, constitutes a Default under this Agreement and entitles the Surety to injunctive relief for specific enforcement of the foregoing provision.
3. Any original, additional or renewal premium due for any Bond.

With respect to claims against the Surety:

1. Surety shall have the exclusive right for itself and the Undersigned to determine in its sole and absolute discretion whether any claim or suit upon any Bond shall, on the basis of belief of liability, expediency or otherwise, be paid, compromised, defended or appealed.
2. Surety may incur such expenses, including reasonable attorneys' fees, as well as investigative, accounting, engineering or other consultants' fees, as it deems necessary or advisable in the investigation, defense and payment of such claims and completion of any Contract with respect to which Surety has undertaken any Bond.
3. Surety's determination in its sole and absolute discretion of the foregoing shall be final and conclusive upon the Undersigned.
4. An itemized statement of loss and expense incurred by Surety, sworn to by an officer of Surety, shall be prima facie evidence of the fact and extent of the liability of Undersigned to Surety in any claim or suit by Surety against Undersigned.

**SURETY'S REMEDIES IN EVENT OF DEFAULT:** In the event of Default, as defined above, Surety may, at its option and sole and absolute discretion:

1. Take possession of the work under any and all Contracts and to arrange for its completion by others or by the obligee of any Bond;
2. Take possession of the Principal's or any of the Undersigned's equipment, materials and supplies at the site of the work, or elsewhere, if needed for prosecution of the work, as well as Principal's office equipment, books and records, computer hardware and software, and utilize the same in completion of the work under the Contract without payment of any rental for such use;
3. Loan or guarantee a loan to Principal or any of the Undersigned of such money as Surety shall see fit, for the purpose of completing any Contract, or for discharging Principal's obligations for labor, material, equipment, supplies and other charges, or discharging Surety's liability under any Bond, incurred in connection with any Contract;
4. Assert and prosecute any right or claim hereby assigned, transferred or conveyed in the name of the Principal and to compromise and settle any such right or claim on such terms as it considers reasonable under the circumstances in its sole and absolute discretion subject only to the requirement that it act in good faith;
5. Take such other action as Surety deems necessary to fulfill its obligations under any Bond.

Undersigned waive all notice of such default, of the payment of any claim or of the making of any loan by Surety. Should Undersigned learn of any claim or suit against Principal for which Surety may be held liable, Undersigned shall give prompt notice to Surety of such claim or suit.

Separate suits may be brought under this Agreement as causes of action accrue, and the pendency or termination of any such suit shall not bar any subsequent action by Surety.

Hudson Insurance Company

Page 3 of 10

**SECURITY TO SURETY:** As collateral security for the agreement of the Undersigned to repay all loss and expenses to Surety, the Undersigned:

1. Assigns to Surety, as of the date of execution of any Bond, and grants a security interest to Surety in all rights of the Undersigned in, or in any manner growing out of:
   a. Any Contract or modification thereof;
   b. Any subcontractor purchase order and against any legal entity and its surety who has contracted with Principal to furnish labor, materials, equipment and supplies in connection with any Contract;
   c. Monies, Contract Balances due or to become due Principal on any Contract, including all monies earned or unearned which are unpaid at the time of notification by Surety to the Obligee of Surety's rights hereunder;
   d. Any and all rights, title, interest in, or use of any license, patent, copyright or trade secret which is or may be necessary for the completion of any bonded work;
   e. Any actions, causes of action, claims or demands and the proceeds therefrom whatsoever which Principal may have or acquire against any party to a Contract, or arising out of or in connection with any Contract, including but not limited to those against obligees and design professionals and any surety or sureties of any obligee, and Surety shall have full and exclusive right, in its name or in the name of the Principal, but not the obligation, to prosecute, compromise, release or otherwise resolve such actions, causes of action, claims and demands;
   f. All monies due or to become due to Principal on any policy of insurance relating to any claims arising out of the performance of any Contract or to policy refunds;
   g. All tools, material, supplies, plants, inventory, and equipment (whether completely manufactured or not), wherever located, which have been or hereafter may be purchased, used or acquired for use, entirely or partly, in connection with or to be incorporated into the matter that is the subject of any Contract; and
   h. All amounts that may be owing from time to time by Surety to Principal or any of the Undersigned in any capacity including, without limitation, any balance or share belonging to any of the Undersigned or any deposit or other account with Surety, which lien and security interest will be independent of any right of setoff which Surety may have.

   The Surety agrees to forbear exercising the rights granted to it in (a) through (h) above until there is a Default under this Agreement;

2. Irrevocably nominate and appoint any officer of Surety as the true and lawful attorney-in-fact of the Undersigned, with full right and authority in event of Principal's Default to:
   a. Sign the name of any of the Undersigned to any voucher, release, satisfaction, check, bill of sale of property referred to herein, or any other paper or contract necessary or desired to carry into effect the purposes of the agreement;
   b. Dispose of performance of any Contract by subletting it in Principal's name or otherwise.
3. Authorize Surety to join any or all of the Undersigned as parties defendant in any action, regardless of venue, against Surety on account of any Bond, and to enforce the obligations hereunder directly against any of the Undersigned without the necessity of first proceeding against the Principal;
4. Agree that all monies earned by Principal under any Contract are trust funds, whether in the possession of Principal or otherwise, for the benefit of, and for payment of Principal's obligations for, labor, material, and supplies furnished to Principal in performance of such Contract for which Surety would be liable under any Bond on such Contract, and the performance of Principal's or Surety's obligations to any obligee on such Contract;
5. Agree that this Agreement shall constitute a Security Agreement of the Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect, and may be used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement, or under law, or in equity. A copy of or reproduction of this Agreement may be filed as a Financing Statement.

**GENERAL PROVISIONS:**
1. Assent by Surety to changes in any Contract or Bond or refusal to assent shall not release or affect the obligations of Undersigned to Surety even though any such assent by the Surety does or might increase the liability of the Undersigned.
2. The Surety may decline to execute any bond (including those for which any application was submitted, any bid or proposal bond was issued by the Surety, or otherwise) without impairing the validity of this Agreement, and the Undersigned hereby waive any and all claims against the Surety due to its refusal or failure to so execute.
3. The Surety shall have every right, defense or remedy which a personal surety without compensation would have, including the right of exoneration and the right to subrogation. The security interest, trust, and other rights granted herein will not be

EXHIBIT "A"

Hudson Insurance Company

Page 4 of 10

4. Until Surety shall have been furnished with competent evidence of its discharge, without loss from any Bonds, Surety shall have the right to free access at reasonable times to the books, records and accounts of each of the Undersigned for the purpose of examining, copying or reproducing them. Each one of the Undersigned hereby authorizes any depositories in which funds of any of the Undersigned may be deposited to furnish to Surety the amount of such deposits as of any date requested, and any legal entity doing business with the Undersigned is authorized to furnish any information requested by Surety concerning any transaction. Surety may furnish in confidence copies of any information, which it now has or may hereafter obtain concerning each of the Undersigned, to other persons or companies for the purpose of procuring co-suretyship or reinsurance or of advising interested persons or companies.

   deemed a waiver of Surety's equitable subrogation rights or other rights, said security in rights being in addition to the rights of exoneration, subrogation, and other rights to which the Surety is entitled to under the law or in equity.

5. The Undersigned waive, to the extent permitted by law, so far as their respective obligations under this Agreement are concerned, all rights to claim any property, including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any state, territory, or possession of the United States.

6. The Undersigned will, on request of the Surety, procure the discharge of Surety from any Bond and all liability by reason thereof. If such discharge is unattainable, the Undersigned will, if requested by Surety, either deposit collateral with Surety, acceptable to Surety, sufficient to cover all exposure under such Bond or bonds, or make provisions acceptable to Surety for the funding of the obligation(s).

7. Undersigned warrant that each of them is specifically and beneficially interested in the obtaining of each Bond.

8. In the event that the execution hereof by any of the Undersigned may be defective or invalid for any reason, such defect or invalidity shall not in any manner affect the validity of this obligation or the liability hereunder of any other of the Undersigned. Invalidity of any provision of this Agreement by reason of the laws of any state or for any other reason shall not render the other provisions hereof invalid.

9. Execution by Principal or any of the Undersigned of any application for any bond or of any other agreement of indemnity on behalf of Principal, or the taking of indemnity of any other person by Surety with respect to any Bond of the Principal, shall in no way be deemed to waive, diminish or abrogate any rights of Surety under this Agreement.

10. The Undersigned waive and subordinate all rights of indemnity, subrogation and contribution each against the other until all obligations to the Surety under this Agreement, at law or in equity, have been satisfied in full.

11. This Agreement may not be changed or modified orally. No change or modification shall be effective unless made by written endorsement executed to form a part hereof.

12. This Agreement is to be liberally construed so as to protect, exonerate and indemnify the Surety.

13. All parties agree that any scanned, electronically digitized or any microfilmed copy of this document made by Surety as part of its record storage and retention program shall be as effective as the original for all purposes.

14. The Undersigned has relied upon its own due diligence in making its own independent appraisal of Principal and its business and financial condition, will continue to be responsible for making its own independent appraisal of such matters, and has not relied upon and will not hereafter rely upon Surety for information. Surety has no duty to inform any of the Undersigned Indemnities of the financial condition or other affairs related to Principal.

15. The Undersigned shall remain responsible to Surety under this Agreement regardless of any changes in the relationship of the Undersigned with Principal.

16. The Undersigned further waive personal service of any and all process.

17. The Agreement may be terminated as to any Undersigned upon 30 days' written notice sent by registered or certified mail to the Surety at its principal office, The Hudson Insurance Company, Attention: Bond Department, 100 William Street, 5th Floor, New York, NY, 10038, but such notice of termination shall not operate to modify, bar, or discharge the Undersigned as to the Bonds that may have been executed prior to such termination, and renewals and extensions thereof. It is understood and agreed that oral notice to or constructive notice to any agent or employee of Surety shall not constitute effective notice of termination under this agreement.

18. The obligations of the Undersigned hereunder are joint and several. Surety may bring separate suits hereunder against any or all of the Undersigned as causes of action may accrue hereunder. Surety need not proceed first against the Principal or any of the Undersigned, or any third party, or exhaust or avail itself of any other legal remedy or of any collateral.

Such termination of liability as to an Undersigned shall in no way affect the obligation of any other Undersigned who has not given notice as herein provided.

Hudson Insurance Company

Page 5 of 10

EXECUTED this __16th__ day of __June__, 2015

IN WITNESS [WHERE]OF, the Indemnitors, intending to be legally bound hereby, have hereunder set their hands and affixed their seals as of the __16th__ day of __June__, 2015

ATTEST/WITN[ESS]

_Saul Mesia_ (signature)

Corp. Tax ID #: 120979

**Corporation or Limited Liability Company**
(Contractor and Indemnitor):

Horizone Construction I, Ltd.

By: _____ (SEAL)

Name & Title: Rosa M De Stefano - Managing Member

Corporate Address:
10517 Alameda Avenue   4529 Osborne Dr. Ste A
El Paso, Texas 79927    El Paso TX 79922

ATTEST/WITN[ESS]

_Saul Mesia_ (signature)

Corp. Tax ID #: 1679809

**Corporation or Limited Liability Company**
(Contractor and Indemnitor):

Rent and Build, Ltd.

By: _____ (SEAL)

Name & Title: Luis R. De Stefano - Managing Member

Corporate Address:
10517 Alameda Avenue   4529 Osborne Dr. Ste A
El Paso, Texas 79927    El Paso TX 79922

If additional s[ignat]ures required, use page with additional signature blanks and attach the signed copy to this agreement.

EXHIBIT "A"

WITNESS:

**Partnership**
(Contractor and Indemnitor):

_____

By:_____(SEAL)
                                    Partner

By:_____(SEAL)
                                    Partner

Partnership Address:

Tax ID #_____  _____

WITNESS:

**Proprietorship**
(Contractor and Indemnitor):

_____

By:_____(SEAL)
                                   Proprietor

Proprietorship Address:

Tax ID #_____  _____

Hudson Insurance Company

Page 7 of 10

WITNESS: _____ Saúl Misis _____

Individual Indemnitor:
Signature: _____

Name: Rosa M. De Stefano , individually

Address:
613 Willow Brook
El Paso, Texas 79922

Indemnitor's SS#: _____

WITNESS: _____ Saúl Misis _____

Individual Indemnitor:
Signature: _____

Name: Luis R. De Stefano , individually

Address:
613 Willow Brook
El Paso, Texas 79922

Indemnitor's SS#: _____

WITNESS: _____

Individual Indemnitor:
Signature: _____

Name: _____ , individually

Address: _____

Indemnitor's SS#: _____

Hudson Insurance Company

Page 8 of 10

| WITNESS: | Individual Indemnitor: |
|---|---|
| _____ | Signature: _____ |
| | Name: _____, individually |
| | Address: _____ |
| | _____ |
| | Indemnitor's SS#: _____ |

If additional signatures required, use page with additional signature blanks and attach the signed copy to this agreement.

CORPORATE/LLC ACKNOWLEDGMENT(S)

STATE OF _____ )
                                 ) ss:
COUNTY OF _____ )

On this _____ day of _____, _____, personally came before me, _____ of _____, known to me to be the person(s) who executed the foregoing and acknowledged that ___he___ had the authority to execute the same as the act of said corporation/company.

_____ (SEAL)
My Commission Expires:           Notary Public

STATE OF _____ )
                                 ) ss:
COUNTY OF _____ )

On this _____ day of _____, _____, personally came before me, _____ of _____, known to me to be the person(s) who executed the foregoing and acknowledged that ___he___ had the authority to execute the same as the act of said corporation/company.

_____ (SEAL)
My Commission Expires:           Notary Public

If additional acknowledgements required, use page with additional acknowledgement blanks and attach the signed copy to this agreement.

## PARTNERSHIP ACKNOWLEDGMENT(S)

STATE OF Texas )
) ss:
COUNTY OF El Paso )

On this 15th day of June, 2015, personally came before me, Luis R. De Stefano of Horizone Construction Ltd. to me known, and stated that he is (are) partner(s) in the firm of Horizone Construction Ltd. President and acknowledged that he executed the foregoing instrument as the act of the said firm.

_____ (SEAL)
Notary Public

My Commission Expires:

## PROPRIETORSHIP ACKNOWLEDGMENT

STATE OF _____ )
) ss:
COUNTY OF _____ )

On this ____ day of _____, _____, personally came before me, _____ Proprietor of _____ to me known, and known to me to be the individual(s) who executed the foregoing instrument, and acknowledged that ___ he ___ executed the same.

_____ (SEAL)
Notary Public

My Commission Expires:

## INDIVIDUAL ACKNOWLEDGMENT(S)

STATE OF Texas )
) ss:
COUNTY OF El Paso )

On this 15th day of June, 2015, personally came before me, Rosa M. DeStefano, to me known, and known to me to be the individual(s) who executed the foregoing instrument, and acknowledged that ___ he ___ executed the same.

_____ (SEAL)
Notary Public

My Commission Expires: December 28, 2015

ADA ARLETTE BONILLA
MY COMMISSION EXPIRES
December 28, 2015

**EXHIBIT "A"**

Hudson Insurance Company

Page 10 of 10

STATE OF _____ )
) ss:
COUNTY OF _____ )

    On this \_\_\_\_\_ day of _____, _____, personally came before me,

_____, to me known, and known to me to be the individual(s) who executed the foregoing instrument, and acknowledged that \_\_\_\_he\_\_\_\_ executed the same.

_____ (SEAL)

My Commission Expires:                                     Notary Public

STATE OF _____ )
) ss:
COUNTY OF _____ )

    On this \_\_\_\_\_ day of _____, _____, personally came before me,

_____, to me known, and known to me to be the individual(s) who executed the foregoing instrument, and acknowledged that \_\_\_\_he\_\_\_\_ executed the same.

_____ (SEAL)

My Commission Expires:                                     Notary Public

STATE OF _____ )
) ss:
COUNTY OF _____ )

    On this \_\_\_\_\_ day of _____, _____, personally came before me,

_____, to me known, and known to me to be the individual(s) who executed the foregoing instrument, and acknowledged that \_\_\_\_he\_\_\_\_ executed the same.

_____ (SEAL)

My Commission Expires:                                     Notary Public

If additional acknowledgement is required, use page with additional acknowledgement blanks and attach the signed copy to this agreement.